**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Lee Ann McKay, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25 C 679 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| Nicole Patino, David Marder, University of | ) | |
| Illinois Hospital and Health Sciences System, | ) | |
| Psychological Resources, Ltd, Jennifer Schulz, | ) | |
| Brian Helmold, Hector Arellano, George | ) | |
| Lauder, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated herein, the UIH Defendants' motion to dismiss [15] is granted. The City Defendants' motion to dismiss [43] is granted. Plaintiffs' complaint is dismissed without prejudice and with leave to amend. If Plaintiff believes she can state a plausible federal claim arising out of events within the scope of her original complaint, in accord with this Order and the Federal Rules of Civil Procedure, she may file an amended complaint by 1/9/26.

### I.   Background

This case represents the latest twist in a series of employment-related lawsuits brought by Plaintiff, who has worked for the Chicago Fire Department ("CFD") since 1999. *See McKay v. City of Chicago*, No. 14 CV 10446, 2022 WL 21362792 (N.D. Ill. Jan. 25, 2022), *aff'd,* No. 22-1251, 2023 WL 1519525 (7th Cir. Feb. 10, 2023); *McKay v. City of Chicago*, No. 21 C 577, 2025 WL 2418436, at *1 (N.D. Ill. Aug. 20, 2025). The gist of the present suit is that Defendants allegedly required Plaintiff to submit to, and performed, unnecessary and suspicionless mental and

physical tests, ostensibly to determine whether she was fit for duty, although Plaintiff claims that the real reason was to retaliate against her for her complaints of discrimination.

Plaintiff is currently litigating a separate case, Case No. 21 C 577, in which she complains, among other things, that she suffered sex discrimination because the bathroom facilities available to women in certain firehouses at which she worked are unequal and inferior to those available to men. She recounts in the present complaint that, when she complained about her disparate treatment, she was harassed by several co-workers. The harassment intensified in January 2024, following an incident in which, after one of the alleged harassers was charged with a crime, Plaintiff expressed sympathy for the alleged victim. Plaintiff reported the intensified harassment, and she was promptly interviewed by the Office of the Inspector General ("OIG"). A few months later, in May 2024, two OIG investigators, Defendants Hector Arellano and George Lauder, came to her home, unannounced, to interview Plaintiff about her January 2024 complaint. Plaintiff felt threatened and intimidated by the unannounced home visit. Lauder scheduled a follow-up interview with Plaintiff at CFD headquarters in July 2024. Plaintiff claims that she was threatened by Defendants Brian Helmold, Deputy Fire Commissioner for Administrative Services, and Jennifer Schulz, Assistant Deputy Chief Paramedic, Medical Section, after the meeting.

On June 29, 2024, while discussing the ongoing harassment with a supervisor, she became "slightly verklempt for a moment," her voice quivering and eyes welling up, and she needed "a minute to compose herself." (Compl. ¶ 43, ECF No. 1.) Although she alleges that she was only momentarily emotional, she was transported, at the urging of others, to a hospital for "stress" and "anxiety." (*Id.* ¶ 49-50.) She was discharged after only a half hour, but nevertheless she was placed on "lay up," or medical leave. Plaintiff met with OIG again, although she alleges that Helmold tried to cancel the meeting, and Schulz threatened her with discipline afterward. (*Id.* ¶¶ 54-59.)

On July 5, 2024, Plaintiff discussed her lay up with Schulz and Defendant Dr. Nicole Patino, Chief Medical Director for the City of Chicago Office of Public Safety Administration. She alleges that she never actually wanted or needed medical leave; all she wanted was to avoid the harassment she was suffering. On July 11, 2024, Dr. Patino examined Plaintiff, took her blood pressure, which was "slight[ly] elevat[ed]," notified her that she needed to complete a "mental capacity fitness for duty exam," and asked Plaintiff invasive questions. (*Id.* ¶¶ 63-64.) Plaintiff refused to answer Dr. Patino's questions. When Dr. Patino suggested that Plaintiff might need an accommodation due to health issues, Plaintiff responded that she did not, as she had no problems completing her work except that once she had "show[n] some emotion . . . because she was being harassed." (*Id.* ¶ 68.)

On July 15, 2024, Plaintiff appeared for a mental capacity examination. The examining psychologist asked invasive questions about Plaintiff's family, and he asked her to describe in detail the discrimination, harassment, and retaliation she had experienced. Plaintiff refused to make a list of all such incidents, citing the ongoing litigation. Plaintiff was subjected to additional tests and asked to fill out questionnaires. After another appointment in August 2024, the psychologist found her fit for duty. She notified Dr. Patino of the finding and informed her that she wanted to return to work.

Citing her elevated blood pressure at the July 11, 2024 examination, Dr. Patino ordered Plaintiff to complete an Occupational Safety and Health Administration Respirator Medical Evaluation Questionnaire. Then, based on Plaintiff's history of asthma, she ordered Plaintiff to undergo a spirometry test and make an appointment for an examination by a pulmonologist, who would have to "complete a form and testing for new applicants." (*Id.* ¶ 85.) Plaintiff objected, informing Dr. Patino that she had been working for CFD for twenty-five years, and she believed

she should not have to submit to this additional testing as if she were a new hire, if other longstanding employees like her did not have to. She reiterated that she had only gone on medical leave because of the distress of the harassment she was suffering, which had nothing to do with her lungs.

Eventually, Plaintiff met with Defendant Dr. David Marder, of the University of Illinois Hospital and Health Sciences System in Chicago ("UIH"), to discuss a pulmonary function test. Plaintiff told him that her primary care doctor had told her that she did not need a pulmonary function test, and Plaintiff herself could not see any need for it, as she has never had a breathing or asthma issue at work. Further, in her current role as a CFD Engineer, her job duties revolve around operating the fire engine; she does not go into burning buildings and has not needed to wear a breathing apparatus at work for over ten years. Additionally, she said, she has drug allergies that would make any pulmonary function test unnecessarily dangerous, to the extent it were to include the administration of any drugs to provoke or induce asthma symptoms. Dr. Marder tried to reassure her that the test would be performed at the hospital where they would be able to promptly respond to any medical emergency occasioned by the test, but Plaintiff was adamant that she would not take any such test.

Dr. Patino notified Plaintiff that she was ordering the pulmonary function test to be performed in three parts: one part without drugs, one with albuterol, and one with methacholine. The test was scheduled for December 31, 2024, which Plaintiff alleges is "the busiest day of the year for medical emergencies." (*Id.* ¶ 103.) Plaintiff refused to take the parts of the test that involved drugs. Dr. Patino informed Plaintiff that she would not clear her to return to work. Plaintiff believes she is being treated differently from other CFD employees because of her complaints about harassment.

Plaintiff's complaint consists of five counts: Count I, for "violations of the Fourth and Fourteenth Amendments (Retaliation)," under 42 U.S.C. § 1983; Count II, for conspiring to commit the same constitutional violations; Count III, for intentional infliction of emotional distress; Count IV, for "invasion of privacy/intrusion upon seclusion"; and Count V, for tortious interference with employment. Defendants move to dismiss for failure to state a claim and on grounds of qualified immunity.

## II.    <u>Legal Standards</u>

"A motion under [Federal] Rule [of Civil Procedure] 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alteration marks omitted). Under this standard, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

Generally, "pleadings need not anticipate or attempt to circumvent affirmative defenses." *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) (internal citation omitted). "Qualified immunity is an affirmative defense, but once the defendant raises it, 'the burden shifts to the plaintiff to defeat it.'" *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021) (quoting *Leiser v. Kloth*, 933 F.3d 696, 701-02 (7th Cir. 2019)). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate

5

clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Dismissal under Rule 12(b)(6) is appropriate based on qualified immunity only when the plaintiffs' well-pleaded allegations, taken as true, do not state a claim of violation of clearly established law." *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (cleaned up). The Court may consider, "in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

### III.   <u>Discussion</u>

Before the Court are two motions to dismiss, one filed by Dr. Marder and UIH ("the UIH defendants"), and the other filed by Dr. Patino and the remaining defendants ("the City defendants"). The motions raise various arguments, but they have one fundamental point in common: to the extent that Plaintiff identifies concrete actions that allegedly harmed her, Defendants argue, she does not state a plausible claim of a constitutional violation arising out of these actions. When the labels, conclusions, and innuendo are stripped away, *see Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009), the actions that allegedly harmed Plaintiff appear to consist of (1) Lauder and Arellano coming to her house unannounced to interview her, and (2) Dr. Patino requiring her to submit to unnecessary testing, including the pulmonary function test administered by Dr. Marder. These actions, Defendants argue, did not plausibly violate Plaintiff's Fourth Amendment rights because (1) merely asking questions is not a search or seizure to which the Fourth Amendment applies, and (2) any search or seizure that she suffered was reasonable under the circumstances. Further, to whatever extent she may state a plausible claim, Defendants argue,

they are entitled to qualified immunity because none of their actions violated any clearly established right.

First, Defendants are correct that conducting interviews and asking questions, by themselves, are not Fourth Amendment searches. The Seventh Circuit has explained that the Fourth Amendment should not be "interpreted to reach the putting of questions to a person, even when the questions are skillfully designed to elicit what most people would regard as highly personal private information." *Greenawalt v. Indiana Dep't of Corr.*, 397 F.3d 587, 590 (7th Cir. 2005). Accordingly, a "psychological evaluation is not a 'search' for Fourth Amendment purposes." *Brewer v. Wisconsin Bd. of Bar Examiners*, 270 F. App'x 418, 420 (7th Cir. 2008). Nor is it either a search or a seizure to show up to a residence to ask questions of persons within, without more. *See Wyman v. James*, 400 U.S. 309, 324 (1971). To the extent Plaintiff complains of Lauder and Arellano showing up to her house or of any psychological test she was given, she fails to state a claim of a constitutional violation. Plaintiff argues that she felt intimidated by the investigators showing up at her door, armed, before eight in the morning, but she does not allege that they did anything in particular other than show up to her door. This alone is not enough to violate the Fourth Amendment. *See United States v. Jones*, 22 F.4th 667, 674 (7th Cir. 2022).

Plaintiff's main issue seems to be with Dr. Patino's decision to require her to submit to a pulmonary function test. Defendants appear to concede that this testing qualifies as a Fourth Amendment search, citing *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602, 624 (1989) (holding that urine testing in public employment context is a search within the scope of the Fourth Amendment). *See also Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 665 (1989) (same). They argue, however, that the pulmonary function testing did not violate the Fourth

Amendment because it was not unreasonable. And even if there is any question about the reasonableness of the test, Defendants argue, they are entitled to qualified immunity.

"What is reasonable, of course, depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Skinner*, 489 U.S. at 619 (internal quotation marks omitted). And "the permissibility of a particular practice 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'" *Id.* (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). Suspicionless drug testing of government employees is constitutionally permissible when it "serves special government needs," *Von Raab*, 489 U.S. at 665, such as, for example, "when the government employee . . . holds a 'safety-sensitive' position." *Krieg v. Seybold*, 481 F.3d 512, 517 (7th Cir. 2007) (quoting *Skinner*, 489 U.S. at 630). Defendants argue that similar logic permits the pulmonary function testing that Dr. Patino ordered, as Plaintiff, a firefighter, certainly holds a "safety-sensitive" position. *See Kramer v. City of Jersey City*, 455 F. App'x 204, 207 (3d Cir. 2011) (citing *Von Raab*, 489 U.S. at 677, *Policemen's Benev. Ass'n of New Jersey, Loc. 318 v. Washington Twp. (Gloucester Cnty.)*, 850 F.2d 133, 141 (3d Cir. 1988), and *Fraternal Ord. of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 113 (3d Cir. 1987)); *see also Krocka v. Bransfield*, 969 F. Supp. 1073, 1091 (N.D. Ill. 1997) (citing, *inter alia*, *Strawder v. City of Chicago*, No. 87 C 5012, 1989 WL 134335, at *5-6 (N.D. Ill. Oct. 20, 1989)) ("[P]olice and fire departments' policies of annual medical exams, random drug testing, and drug testing based on individualized suspicion have been held to fall within the reasonable bounds of the Fourth Amendment."), *aff'd sub nom. Krocka v. City of Chicago*, 203 F.3d 507 (7th Cir. 2000).

Neither party has cited—and the Court has not found—any binding precedent that settles the question of how to balance the intrusion of the testing at issue here against its promotion of

legitimate governmental interests. Where the defendants are unable to "point[] to case law that necessitates dismissal" because the case "does not fit easily within Fourth Amendment precedent," courts should tread carefully. *See Frankhouser v. Clearfield Cnty. Career & Tech. Ctr.*, No. 3:18-CV-180, 2019 WL 1259570, at *7 (W.D. Pa. Mar. 19, 2019) (denying motion to dismiss given the "paucity of case law" on point); *see Bowers v. Cnty. of Taylor*, 598 F. Supp. 3d 719, 731-32 (W.D. Wis. 2022). The Court is hesitant to reject this claim as legally unsound at the pleading stage, before the parties have had the ability to develop a record, without stronger support in case law for the dismissal than Defendants have cited.

But, even if Plaintiff is entitled to the benefit of the doubt as to whether she states a claim under Rule 8, the paucity of case law tends to cut against her when it comes to Defendants' qualified immunity defense. Plaintiff bears the burden of showing that Defendants violated a "clearly established" right, which means she must "identify a reasonably analogous case that articulated the constitutional right at issue and applied it to a similar factual circumstance, or . . . show that the violation was so obvious that a reasonable official in the defendants' positions necessarily would have recognized that their actions violated the Constitution." *Garcia v. Posewitz*, 79 F.4th 874, 880-81 (7th Cir. 2023). Plaintiff need not identify a case that is "exactly on point," *id.*, but neither may she cite case law in broad strokes to "define clearly established law at a high level of generality." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (internal quotation marks omitted). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks omitted).

Plaintiff has not come forward with any analogous case holding that the sort of testing she objects to is unconstitutional under circumstances similar to those in this case, nor is the Court aware of any. *See McKay v. City of Chicago*, No. 21 CV 00577, 2024 WL 3251349, at *10 (N.D.

Ill. July 1, 2024) (dismissing § 1983 claims arising out of drug testing in Plaintiff's 2021 lawsuit for a similar reason). And the Court cannot conclude that the alleged constitutional violation here is patently obvious, in the sense that it is such an "elementary" constitutional violation "that the absence of a reported case with similar facts demonstrates nothing more than widespread compliance with well-recognized constitutional principles." *Eberhardt v. O'Malley*, 17 F.3d 1023, 1028 (7th Cir. 1994); *see Vodak v. City of Chicago*, 639 F.3d 738, 747 (7th Cir. 2011). Plaintiff does not, apparently, dispute the medical facts upon which Dr. Patino's testing decisions were predicated; instead, her theory is that Plaintiff's medical and employment history as a whole shows that the testing was unnecessary and stemmed only from Dr. Patino's subjective desire to retaliate against Plaintiff. Of course, "the possibility of an ulterior motive," such as retaliation, "does not matter, because analysis under the Fourth Amendment is objective." *United States v. Johnson*, 874 F.3d 571, 573 (7th Cir. 2017); *see United States v. Churchill*, 440 F. Supp. 3d 919, 923 n.1 (N.D. Ill. 2020). Qualified immunity, too, is assessed under an "objective standard." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982) ("[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery.")). Even assuming (as the Court must, at this stage) that the facts were exactly as Plaintiff alleges them, the Court cannot say that "the contours of the law were so well defined that it would [have been] clear to a reasonable offic[ial]" in Dr. Patino's position that the testing decisions she made were unlawful. *Bowers*, 598 F. Supp. 3d at 732; *see Leiser*, 933 F.3d at 704. Dr. Patino is entitled to qualified immunity on the issue of whether the pulmonary function testing violated the Fourth Amendment.

It follows that Dr. Marder and any other defendant alleged to have participated in the testing is likewise protected by qualified immunity from any Fourth Amendment claim. The Court also

notes that it is not clear whether Plaintiff intends to assert any § 1983 claim against Dr. Marder under some other theory. In her response brief, she accuses him of being "reckless" and "indifferen[t]" (ECF No. 38 at p. 7) based on his willingness to perform testing by administering certain drugs that Plaintiff considered to be unacceptably dangerous to her; but she admits that he did not perform any such testing because she refused to submit to it. In any event, he cannot be liable for any "indifference" there might have been in a procedure he did not perform, which therefore did not cause injury. *See Love v. Dart*, 764 F. Supp. 3d 710, 716 (N.D. Ill. 2025).

Plaintiff also argues in her response brief that CFD's policy of requiring employees on medical leave to confine themselves to their homes is unconstitutional. The Court fails to see how this argument is pertinent to any of the claims Plaintiff has raised in her complaint. Additionally, the Court doubts whether the defendants in this case are the appropriate parties to sue over this department-wide policy. To the extent that Plaintiff is attempting to constructively amend her complaint in her opposition brief, such amendments are "rarely . . . appropriate." *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 490 (7th Cir. 2023); *Neurodegenerative Disease Rsch., Inc. v. Nw. Univ.*, No. 25-CV-02775, 2025 WL 3171287, at *6 (N.D. Ill. Nov. 13, 2025). In any event, another judge in this judicial district dismissed a similar claim in *Spring-Weber v. City of Chicago*, No. 16 C 8097, 2018 WL 4616357, at *12 (N.D. Ill. Sept. 26, 2018), and this Court finds that decision persuasive. Therefore, any claim that the CFD home confinement policy is unconstitutional is dismissed, and any attempt to amend the complaint to challenge the CFD home confinement policy is denied as futile.

Plaintiff mentions the Fourteenth Amendment in her complaint, but she does not analyze it or explicitly discuss any Fourteenth Amendment theory in her response brief. She appears to refer to the Fourteenth Amendment only because it "mak[es] [the Fourth Amendment] fully

applicable to state action." *See Greenawalt*, 397 F.3d at 589. In what appears to be an abundance of caution, the City Defendants argue that Plaintiff does not state a claim of discrimination or retaliation under the equal protection clause of the Fourteenth Amendment. *Forgue v. City of Chicago*, 873 F.3d 962, 968 (7th Cir. 2017); *Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004); *see Blunt v. McKinstry*, 54 F. App'x 227, 229 (7th Cir. 2002), *Gray-Rohan v. Gateway Tech. Coll.*, No. 19-CV-1032-PP, 2024 WL 385730, at *2 (E.D. Wis. Feb. 1, 2024). The Court does not read her complaint to assert any such claim, but even if it does, she does not respond to the argument, so the Court deems any equal-protection claim to be waived or forfeited, at least for purposes of the present motion. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *see Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012).

For all these reasons, Plaintiff fails to state a claim that she was deprived of any constitutional right under § 1983. It follows that she fails to state a claim of conspiracy. "Section 1983 does not reach a conspiracy to deny a civil right in the absence of an actual denial of such a right." *Archer v. Chisholm*, 870 F.3d 603, 620 (7th Cir. 2017); *see Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016) (citing *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000)) ("Without a viable federal constitutional claim, the conspiracy claim under § 1983 necessarily fails; there is no independent cause of action for § 1983 conspiracy.").

The Court notes that, although Plaintiff describes harassment and frequently accuses Defendants of retaliation, she does not appear to assert any claims under Title VII in this suit, nor does she allege that she filed any charge of discrimination with the Equal Employment Opportunity Commission or Illinois Department of Human Rights, as necessary to exhaust any claim arising out of the questioning and testing issues she describes. She need not prove exhaustion in her

complaint, *see Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 921 (7th Cir. 2007), nor need she cite the correct statute (or any statute), *Mollett v. Luminant Power*, No. 24 CV 4877, 2025 WL 3101842, at *3 (N.D. Ill. Nov. 6, 2025). But, particularly given her familiarity with Title VII litigation, the Court takes her silence on the issue to indicate that she does not intend to assert any Title VII claim in this suit.

Although Plaintiff fails to state any plausible claim that would not be barred by qualified immunity, courts should typically give plaintiffs "at least one opportunity to amend [the] complaint," unless "it is certain that amendment would be futile or otherwise unwarranted." *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). Plaintiff's *pro se* status and the surplusage in Plaintiff's complaint counsel against dismissal with prejudice at this point. As the Court has taken pains to recount in some detail above, Plaintiff's allegations go far beyond what is necessary to assert a Fourth Amendment claim. Although she does not rely on any other legal theory in her response briefs, the Court cannot say for certain whether there is not some potentially viable claim within the scope of the events described in her complaint that she might be able to plausibly state in an amended complaint. Therefore, the Court will grant Plaintiff leave to file an amended complaint, if she can do so in compliance with the principles set forth in this Order and the Federal Rules of Civil Procedure.

Because the Court has dismissed Plaintiff's federal claims, it declines at this time to exercise supplemental jurisdiction over the claims in Counts III-V, which are governed by state law. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) (explaining that "only in 'unusual cases' may a district court exercise its discretion to assert its supplemental

jurisdiction" once federal claims have fallen out of the case before trial). The Court will not determine now whether Plaintiff states a claim in any of these counts. It will make that determination when and if Plaintiff files an amended complaint that states a plausible federal claim. *See St. Bernardine Med. Ctr. v. Health Care Serv. Corp.*, No. 24-CV-02906, 2025 WL 933804, at *7 (N.D. Ill. Mar. 27, 2025); *Porch v. Univ. of Illinois at Chicago, Sch. of Med.*, No. 21-CV-3848, 2022 WL 3082353, at *1 (N.D. Ill. Aug. 3, 2022). For now, Plaintiff's state-law claims are dismissed. *See Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). The dismissal is without prejudice and with leave to replead these claims in any amended complaint Plaintiff might file that asserts a plausible federal claim.

If Plaintiff chooses to file an amended complaint, there is another defect she will have to correct. As the City Defendants correctly explain in their brief, Plaintiff's complaint is an improper group pleading. "A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003). To assert civil rights claims against certain defendants, she must provide sufficient factual detail to support a plausible inference that those defendants "were personally responsible for the deprivation of [her] rights." *Wilson v. Warren Cty., Ill.*, 830 F.3d 464, 469 (7th Cir. 2016) (citing *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988)). And, in any case, civil rights or otherwise, "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Thus, "[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional

14

conduct," do not suffice to state a claim. *See Grieveson v. Anderson*, 538 F.3d 763, 777-78 (7th Cir. 2008) (citing *Alejo*, 328 F.3d at 936). In any amended complaint, Plaintiff must make specific allegations of what each defendant is meant to have done, in sufficient detail to raise a right to relief against that defendant above the speculative level.

**SO ORDERED.**

**ENTERED: December 3, 2025**

**HON. JORGE ALONSO**
**United States District Judge**